## WARREN v. ERIE R. CO.

(Circuit Court of Appeals, Second Circuit. December 15, 1908.)

### No. 57.

1. MASTER AND SERVANT (§ 177*)—DEATH OF SERVANT—NEGLIGENCE—FELLOW SERVANTS.

An interlocking switch having been disconnected, the towerman telegraphed the information to the train dispatcher, who ordered that the switch be operated by the switch stand on the ground and that the towerman should not signal trains to pull in until everything was safe. A rule provided that conductors would be held responsible for the proper use of switches not operated by switch tenders, and that whoever opened a switch should remain until it was closed, unless relieved by a competent employé. Decedent, a freight conductor, approached the tower, when his train was stopped by a block signal, and he was required to take the siding. The head brakeman opened the switch, but did not close it after the train had passed in, and notwithstanding the switch stand showed that the switch was open, the towerman in violation of instructions negligently signaled the next train to proceed, whereupon it passed into the switch and killed decedent in the collision. *Held*, that decedent's death was due solely to the negligence of his fellow servants, the towerman and the head brakeman of the freight train.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 352; Dec. Dig. § 177.*]

2. MASTER AND SERVANT (§ 146*)—DEATH OF SERVANT—NEGLIGENCE—SYSTEM.

Where a railroad had a rule providing that conductors would be held responsible for the proper use of switches by themselves and trainmen,

---

except where switch tenders were placed, and whoever opened a switch should remain there until it was closed, or unless relieved by some other competent employé, and the train dispatcher, on being informed of the disconnection of a switch from a tower, telegraphed to the towerman not to allow trains to pull past the switch until everything was safe, and the disobedience of the rule and such instruction resulted in a collision, which would have been obviated by compliance with either, defendant was not negligent in not providing a safe system for the operation of trains.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 284; Dec. Dig. § 146.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

John W. Lyon and George A. Clement, for plaintiff in error.

Stetson, Jennings & Russell (Frederic B. Jennings, of counsel), for defendant in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. This is an action by the plaintiff, as administratrix, to recover for the death of her intestate, a freight conductor of the defendant, who was killed November 18, 1904, while in the caboose car of his train standing on a siding in the Port Jervis yard, as the result of a collision with a way train leaving the main line because of an open switch. The switch was originally worked from a tower by the interlocking system, but, because of changes in the yard, had been disconnected and for about a month before the accident worked by a Mansfield switch stand on the ground. No switchman was stationed at the switch. October 19th the towerman telegraphed to the train dispatcher:

"The eastbound siding at W X has been disconnected and cannot be thrown by towerman. Will be thrown by Mansfield switch stand on the ground."

The train dispatcher repeated this message, with additions, to the towerman at W X as follows:

"The eastbound siding at W X has been disconnected and cannot be thrown by towerman. Will be thrown by Mansfield switch stand on the ground. This will be entirely up to you to handle, and do not allow trains to pull in until you have everything safe for them, before giving the signal. Please acknowledge receipt of this message giving your names."

The night towerman replied: "O. K. in regard to your wire this p. m."—and the next morning the day towerman sent a similar message.

November 18th at 6:10 p. m., as the deceased approached the tower, his train was stopped by the block signal, and he was informed by the towerman that it was to go into the siding. Thereupon the head brakeman of the train opened the switch by hand, but did not close it after the train had passed in, and so violated rule 117 as follows:

"Conductors will be held responsible for the proper use of the switches used by them and their trainmen, except where switch tenders are placed. Whoever opens a switch shall remain at it until it is closed, unless relieved by some other competent employé."

The Mansfield switch stand shows a red light on the main line when the switch is open; but the towerman, in direct violation of the instructions not to give a signal to a train until everything was safe, without looking out of his window to see whether the switch had been closed by the trainmen, gave a signal by semaphore of a clear track to the next train, which ran into the siding and, caused the death of the plaintiff's intestate. It was no part of the towerman's duty to leave the tower and open and close the switch.

It is perfectly plain, however, that the towerman and the head brakeman of the train were grossly negligent in the performance of their prescribed duties; the former in not taking the pains to see whether the track was clear before signaling the way train, and the latter in not closing the switch after the freight train had passed into the siding. The engineer of the way train may also have been negligent in not observing the danger signal on the Mansfield switch, and the deceased himself in not seeing that the switch which his brakeman had to open was thereafter properly closed. The plaintiff, however, admitting that the negligence of one or more of the fellow servants of the deceased contributed to his death, contends that the defendant was also negligent in not providing a proper system for the safety of its employés at this point, and therefore, under well-established rules, is liable for the result. But we feel compelled to say that the situation was a simple one and the rules applicable to it adequate. The death of the plaintiff's intestate was not due to any insufficiency of the defendant's system, but solely to the negligence of his fellow servants, the towerman and head brakeman of the freight train.

Judgment affirmed.